UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 21-CR-223

DEJAN ZORIC,

        Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Philip T. Kovoor, Assistant United States Attorney, and the defendant, Dejan Zoric, individually and by attorney Dennis Coffey, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.      The defendant has been charged in four counts of a 25-count indictment, which alleges violations of Title 18, United States Code, Sections 2(a), 2(b), 371, 554, and 924(b) and Title 22, United States Code, Sections 2778(b)(2) and 2778(c), against this defendant. The defendant has also been charged in an information, which alleges a violation of Title 18, United States Code, Section 4.

3.      The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count, as set forth below:

## INFORMATION

## THE UNITED STATES ATTORNEY CHARGES THAT:

1. Between December 2017 and March 1, 2019, in the State and Eastern District of Wisconsin and elsewhere,

## DEJAN ZORIC

had knowledge of the actual commission of a felony cognizable by a court of the United States, to wit, conspiracy to violate the laws of the United States, in violation of Title 18, United States Code, Section 371.

2. The defendant did conceal the same by assisting another who was traveling from Wisconsin to Nevada to acquire a firearm with intent to engage in and in furtherance of dealing in firearms, facilitating the transportation, concealment, and sale of a firearm, prior to exportation, knowing the firearm to be intended for exportation contrary to a law and regulation of the United States, and denying the existence of the conspiracy on June 11, 2019. The defendant did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States.

All in violation of Title 18, United States Code, Section 4.

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his

guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 3 years and $250,000. The count also carries a mandatory special assessment of $100, and up to 1 year of supervised release.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF INDICTMENT

9. The government agrees to move to dismiss the indictment, as to this defendant only, at the time of sentencing.

## ELEMENTS

10. The parties understand and agree that in order to sustain the charge of **misprision of a felony**, the government must prove each of the following propositions beyond a reasonable doubt:

**First**, a federal felony was committed;

**Second**, the defendant had knowledge of the commission of that felony;

**Third**, the defendant failed to notify an authority as soon as possible; and

**Fourth**, the defendant did an affirmative act to conceal the crime.

## SENTENCING PROVISIONS

11. The parties agree to waive the time limits in Federal Rule of Criminal Procedure 32 relating to the presentence report, including that the presentence report be disclosed not less than

3

35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

17. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 17 under Sentencing Guidelines Manual §§ 2X4.1(a), 2X1.1(a), and 2M5.2(a)(1).

### Specific Offense Characteristics

18. The parties acknowledge and understand that the government will recommend to the sentencing court that a 4-level increase for possessing or transferring any firearm with knowledge, intent, or reason to believe that it would be transported out of the United States, using or possessing any firearm in connection with another felony offense, or possessing or transferring any firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, under Sentencing Guidelines Manual § 2K2.1(b)(6) and a 2-level increase for 3-7 firearms under Sentencing Guidelines Manual § 2K2.1(b)(1)(A) are applicable to the offense level for the offense charged in the information.

### Role in the Offense

19. Pursuant to Sentencing Guidelines Manual § 3B1.1 and 3B1.2, the parties agree to recommend to the sentencing court that no adjustment be given for an aggravating or mitigating role in the offense.

### Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and

sworn financial statement on a form provided by FLP and any documentation required by the form. The defendant further agrees, upon request of FLP whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

28. The parties agree to recommend no fine.

### Special Assessment

29. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Forfeiture

30. The defendant agrees that he has no interest in the properties listed in the indictment.

### DEFENDANT'S WAIVER OF RIGHTS

31. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying on to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

32. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

33. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the

entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

35. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### MISCELLANEOUS MATTERS

36. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

### GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's Office is free to notify any local, state, or federal agency of the defendant's conviction.

40. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

41. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

42. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ATTACHMENT A

Beginning by at least December 2017 and continuing until on or about March 1, 2019, in the State and Eastern District of Wisconsin and elsewhere, Juan Arturo Charles, Victor Cobian, Richard Mosqueda, Cristina Cole, Rafael Preciado, and others knowingly and intentionally conspired with each other and others to commit several firearms purchasing, trafficking, and smuggling offenses. The primary purpose of the conspiracy was to purchase firearms in the United States, smuggle the firearms to Mexico, and supply the firearms to the Cartel de Jalisco Nueva Generación (CJNG), a transnational criminal organization. To achieve the purpose of the conspiracy, the conspirators found firearms using online gun brokers, purchased firearms, falsely represented themselves as the actual buyers of the firearms, acquired the firearms from licensed firearms dealers, transported the firearms to California, removed the serial numbers from firearms, smuggled the firearms from the United States to Mexico, and transferred the firearms to associates of the Cartel de Jalisco Nueva Generación.

In May 2018, Victor Cobian showed Conspirator 2 two rifles in Oak Creek, Wisconsin, and Conspirator 1 and Conspirator 2 told Victor Cobian that the leader of the firearms trafficking scheme would pay double the price for the firearms. Conspirator 1 told Victor Cobian that the leader of the firearms trafficking scheme was interested in AR-15 rifles. On May 24, 2018, Victor Cobian and Conspirator 2 flew from Chicago O'Hare to Las Vegas, Nevada. Email records from Victor Cobian's Gmail account contained photos of a car rental agreement for Las Vegas from May 25, 2018, to May 26, 2018, and a flight confirmation from Chicago O'Hare International Airport to Las Vegas. Flight records also confirm that Victor Cobian and Conspirator 2 flew to Las Vegas. Conspirator 2 stated that Victor Cobian and Conspirator 2 checked four large gun cases. When they arrived in Las Vegas, Victor Cobian went to meet a friend and received cardboard boxes—consistent with firearms boxes—from his friend in Las Vegas. Conspirator 2 observed

13

these firearms boxes in the rental car in Las Vegas, and transported all of those firearms with Victor Cobian from Las Vegas to California, where those firearms were provided to Richard Mosqueda, a smuggler. Electronic evidence shows that defendant Dejan Zoric is a friend of Victor Cobian's who lives in Las Vegas, and was in regular communication with Victor Cobian around the time of this travel. Conspirator 2 stated that Victor Cobian asked the leader of the firearms trafficking scheme to pay his friend half of the money upfront. Victor Cobian paid Conspirator 2 $3,000 in cash while in Las Vegas, and split the money with Conspirator 1.

On July 26, 2018, Conspirator 3 purchased a Barrett Model M82A1 .50 caliber BMG rifle (Serial: AA002148) from The Shooters' Sports Center in Racine, Wisconsin. Conspirator 3 completed the ATF Form 4473 for this firearm on July 10, 2018, which certified that he was the "actual transferee/buyer of the firearm(s)," when, in fact, he was not. Conspirator 1 fronted the money for this firearm, and Conspirator 3 took this firearm to Conspirator 1's house and gave Conspirator 1 the firearm. Conspirator 1 traveled to Las Vegas on July 27, 2018, and he took the Barrett Model M82A1 .50 caliber BMG rifle (Serial: AA002148) with him. After arriving in Las Vegas, Conspirator 1 rented a car, and was contacted by Victor Cobian who told Conspirator 1 to pick up additional firearms from Victor Cobian's friend Dejan Zoric who lived in Las Vegas. When Conspirator 1 arrived at Zoric's home, he pulled into Zoric's garage, loaded several of Zoric's firearms into his rental car, and left. Telephone toll records confirm that Victor Cobian, Dejan Zoric, and Conspirator 1 were all communicating regularly in the days before and during this trip, and Victor Cobian paid for Conspirator 1's hotel room.

Conspirator 1 then transported all of the firearms, including Zoric's firearms, from Las Vegas to California and transferred the firearms to Conspirator 4. Conspirator 4 provided all the firearms to Richard Mosqueda for smuggling into Mexico. Homeland Security's records show that Mosqueda crossed into the United States on July 26, 2018, July 27, 2018, and July 30, 2018, at the

14

Otay Mesa Port of Entry. Victor Cobian asked Conspirator 1 if he had paid Zoric while in Las Vegas, and Conspirator 1 indicated that he did not. Victor Cobian informed Conspirator 1 that he would pay Zoric from his share of the proceeds. Conspirator 1 also received his share of the proceeds from Victor Cobian.

On October 9, 2018, Victor Cobian purchased two Barrett rifles—Barrett 82A1 .50 caliber (Serial: Barrett AA007837) and Barrett 82A1 .50 caliber (Serial: AA007825). Victor Cobian also purchased a Fabrique Nationale Herstal M249S 5.56 caliber rifle (Serial: M249SA05209). Photographs and videos in Victor Cobian's Gmail account suggests that Victor Cobian was in Las Vegas from October 12, 2018 to October 19, 2018. Victor's bank account confirms this with purchases in Illinois, Iowa, Nebraska, Colorado, Utah, Wyoming, and Las Vegas from October 11, 2018 and October 25, 2018. Telephone toll records show that Victor spoke with Zoric about 146 times between those dates.

In February 2019, an employee of Green Valley Range, a federal firearms licensee in Henderson, Nevada, contacted ATF because of suspicious firearms purchases by Ethan Erhardt. Erhardt had purchased multiple high-powered and belt-fed rifles, claiming he was doing so for testing as part of a contract with the United States military. Erhardt, however, had paid for all of the purchases in cash or gift cards—inconsistent with commercial purchases.

According to ATF Form 4473s, Erhardt purchased four FN America M249S 5.56mm rifles on December 20, 2018, six FN America M249S 5.56mm rifles on December 22, 2018, and ten Barrett M82A1 .50BMG rifles on January 12, 2019—all from Green Valley Range. Erhardt also had ten more FN America M249S rifles on order. In total, Erhardt spent approximately $257,000 in three months on firearms.

On February 19, 2019, ATF established surveillance at Green Valley Range, where Erhardt was scheduled to pick up the firearms. Erhardt arrived and went to speak with Boris Trgovcevic,

a longtime associate of Dejan Zoric, who was waiting in a white cargo van. (Electronic evidence show and business records show that Zoric and Trgovcevic are related or close friends, and that Zoric and Trgovcevic communicated regularly.) Erhardt went into the gun shop, completed the ATF Form 4473, provided $88,098.07 in gift cards as payment, obtained the FN rifles, and started loading the rifles into the cargo van with Trgovcevic. Those firearms are as follows:

- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA01897)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA02436)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA05447)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07101)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07099)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07141)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07111)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07588)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07367)
- FNH America M249S 5.56x45 caliber rifle (Serial: M249SA07431)

On scene, agents conducted an out-of-custody interview with Trgovcevic. Trgovcevic gave consent for agents to search his phone. In that phone, he listed Erhardt's number under the Serbian word for "weapons." Agents seized the 10 firearms, along with Trgovcevic's phone and Erhardt's two phones. Trgovcevic's phone contained multiple conversations about firearms trafficking with Erhardt, Dejan Zoric, and others, including the following:

- In early December 2018, Trgovcevic had sent a message saying "Saw249," inquiring if they could be sent "from USA to Croatia" because "They are going to Mexico." Trgovcevic said that they would simply draft a written order saying that the weapons were being sent

16

to Croatia, but would actually go to Mexico: "Only order will say that. And weapons will go to Mexico. Saw249m."

- On December 21, 2018, Trgovcevic sent Zoric a photo of an FN America M249S rifle—consistent with the ones purchased by Erhardt the day before. In the photo, the rifle was sitting on a cardboard box with the shipping Styrofoam attached. Trgovcevic sent a photo to Zoric of a listing for a firearm and said: "These are on hold. How much they going to give me?" Zoric responded: "We will let you know."

- In February 2019, there were conversations between Erhardt and Trgovcevic discussing orders of specific firearms, where Trgovcevic says repeatedly that he "will let them know." About a week before the seizure, Erhardt told Trgovcevic that they could order 10 SAW rifles for about $88,000, and asked: "How much is he gonna pay for these collapsible ones each? So can we get like 66k today?" A few days later, Trgovcevic asks for the tracking number because "this guy is being pushy, bothering me too much."

Erhardt's phone extraction contains the conversations described above with Trgovcevic, along with conversations about meeting with Trgovcevic, saying in early December 2018: "He's got some more people . . . I'm curious to see where this can go. . . but he has people that want to bring more to the table." Erhardt later says that he is going to "pick up those things for Boris" on December 8, 2018. Erhardt says that he is going to meet Trgovcevic on December 21, 2018—the same day of the first known pickup at Green Valley Range—suggesting that they "started working together like 2 or 3 weeks ago."

Text messages between Victor Cobian and Dejan Zoric suggest that Victor Cobian had been in Las Vegas and returned to Milwaukee on or about December 15, 2018. On December 20, 2018—the day that Erhardt first picked up the firearms, Zoric texted Victor Cobian saying: "I need

17

you to answer." Victor told Zoric to call. Two days later when Erhardt picked up the remaining guns, Zoric again asked Victor Cobian to call.

On March 12, 2019, agents conducted a post-Miranda interview with Erhardt. Erhardt admitted that he purchased the 20 firearms in December 2018, saying that he gave those away as "gifts" to those that were interested in potentially investing in him and his business. He said that all of those firearms went to Trgovcevic, and Trgovcevic was supposed to give them away as gifts. He claimed that the other 10 firearms he intended to purchase on February 19, 2019 were also for Trgovcevic to gift to others. He said that Trgovcevic picked up all of the firearms, and kept them at his house. ATF conducted warrants at Erhardt and Trgovcevic's houses that same day—March 12, 2019, but did not find any of the high-powered firearms or anything of evidentiary value. In total, 4 of the 10 Barrett .50 caliber rifles purchased by Ethan Erhardt on January 12, 2019, at Green Valley Range were recovered in Mexico—three in the control of CJNG members and one in the custody of an unknown cartel member.

On June 11, 2019, agents conducted a non-custodial interview of Zoric. Zoric admitted knowing Trgovcevic and Victor Cobian, but denied any knowledge of firearms trafficking. Zoric said he knew Victor Cobian had issues with ATF in the past, because Victor Cobian had called Zoric and told him about his problems with the law. After identifying Trgovcevic as his friend, Zoric requested a lawyer.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 08/28/2024

DEJAN ZORIC
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 8/28/24

DENNIS COFFEY
Attorney for Defendant

For the United States of America:

Date: 8/28/24

for GREGORY J. HAANSTAD
United States Attorney

Date: 08/28/2024

PHILIP T. KOVOOR
Assistant United States Attorney